IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| NEWCO ENTERPRISES, LLC, § § Plaintiff/Counter-Defendant, § § v. § § SUPER HEATERS NORTH DAKOTA, § LLC, § § Defendant/Counter-Claimant. § § SUPER HEATERS, LLC et al., § § Third-Party Plaintiffs, § § v. § § RONALD CHANDLER, § § Third-Party Defendant. § | Civil Action No. 7:14-cv-00087-O |

## ORDER AND OPINION

Before the Court are Heat On The Fly LLC ("HOTF"), Super Heaters LLC ("SH"), and Super Heaters North Dakota LLC ("SHND"), collectively, the Super Heaters Parties' Brief on Damages and Theories of Recovery (ECF No. 123), filed July 18, 2022; NEWCO Enterprises, LLC ("Newco"), Ronald Chandler ("Chandler"), Chandler MFG, LLC ("Chandler MFG"), and Supertherm Fluid Heating Services, LLC ("Supertherm"), collectively, the Chandler Parties' Brief in Response to Brief on the Super Heaters Parties' Damages (ECF No. 124), filed July 20, 2022; the Super Heaters Parties' Reply (ECF No. 126), filed February 20, 2023; and the Chandler Parties' Sur-Reply (ECF No. 127), filed February 24, 2023. For the reasons contained herein, the Court finds that the Super Heater Parties have proven damages in the form of the royalties paid under

the Agreement between when the breach occurred and when the Super Heater Parties discovered the breach – a sum of $1,872,066.

I.      **Factual Background**[1]

In 2008, SHND entered into the Agreement with Newco for eight trailer-mounted, Oil-Fired Frac Water Heaters. The Agreement required SHND to pay Newco a royalty of 2% of revenue for the first $50,000,000 in revenues per year. The Agreement also contained an "Exclusive Purchase and Use Rights and/or License Agreement," in which Newco agreed to sell Oil-Fired Frac Water Heaters, as defined in the contract, exclusively to SHND. In 2010, SH entered a contract with Newco, containing the same obligations. In 2014, SHND and SH stopped paying royalties. SHND and SH allege they were no longer required to pay royalties because Chandler MFG violated the exclusivity agreement by selling a five-burner unit to Bostick, a competitor of SHND and SH. Therefore, they were justified in terminating the contract.

On June 27, 2014, Newco originated this suit against SHND. Newco asserted breach of the Exclusive Purchase and Use Rights and/or License Agreement by SHND. HOTF and SHND then asserted counterclaims for breach of contract against Ronald Chandler, Chandler Mfg., and Newco on July 18, 2014. HOTF added SuperTherm to the suit on December 22, 2014. Chandler, Chandler Mfg., and SuperTherm asserted affirmative defenses and counterclaims against HOFT and SHND.

On April 20, 2015, the Court granted the parties' Joint Motion for Stay pending an appeal concerning the '993 Patent. On August 6, 2021, the Parties filed a Joint Motion to Lift Stay. The Court granted the Motion and issued a Scheduling Order on August 11, 2021. Third-Party Defendants filed amended complaints and counterclaims on September 16 and 20, 2021.

---

[1] Unless otherwise stated, the recitation of facts is taken from the factual background section of the Court's prior order on the parties' motions for summary judgment (ECF No. 121).

Both the Chandler Parties and the Super Heaters Parties filed motions for summary judgment.[2] The Court denied the Chandler Parties' motions and granted the Super Heaters Parties' motions.[3] The Court found that the Chandler Parties breached the Agreement's Exclusivity Provision, and thereby, the Super Heaters Parties were entitled to damages.[4] The Court ordered the Super Heaters Parties to file briefing on damages, specifically their theories of recovery.[5]

The Super Heaters Parties filed their Brief on Damages and Theories of Recovery (ECF No. 123) on July 18, 2022. The Chandler Parties filed their Brief in Response to Brief on the Super Heaters Parties' Damages (ECF No. 124) on July 20, 2022. In response to the Court's request for further briefing,[6] the Super Heaters Parties filed their Reply (ECF No. 126) on February 20, 2023; and the Chandler Parties filed their Sur-Reply (ECF No. 127) on February 24, 2023. The Court finds that the issue of the Super Heaters Parties' damages is ripe for its review without need for further briefing.

## II.   Legal Standard

The Court assesses the Super Heaters Parties' claimed breach of contract damages under the summary judgment standard. Summary judgment is appropriate only where the pleadings and evidence show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). A genuine dispute of

---

[2] *See* ECF Nos. 81–83, 102–04.
[3] Order on Summary Judgment 2, ECF No. 121.
[4] *Id.* at 12.
[5] *Id.*
[6] *See* ECF No. 125.

material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant must inform the Court of the basis for its motion and identify the portions of the record that reveal there are no genuine disputes of material fact. *Celotex*, 477 U.S. at 323.

The Court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.* And if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the Court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250.

The opposing party must "identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Therefore, where the opposing party fails to respond to a motion for summary judgment, the court may "accept[] as undisputed the facts so listed in support of [the] motion." *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). The Court may grant the motion if the materials submitted make a *prima facie* showing that the moving party is entitled to judgment. *Id.*

### III. Analysis

#### a. Royalties Paid After the Chandler Parties Breached the Contract

The Super Heaters Parties first contend that they were damaged as a result of the Chandler Parties' breach through royalties they paid out under the Agreement after the breach by the

Chandler Parties.[7] The Chandler Parties first breached the Agreement in November 2010, but the Super Heaters Parties did not discover the breach until February 2014, when they terminated the Agreement and ceased paying royalties.[8] The Super Heaters Parties contend they suffered damages in the amount of $1,872,066 – the amount paid in royalties between when the breach occurred and when the Super Heaters Parties discovered the breach.[9]

The Chandler Parties counter that the royalty payments do not constitute breach of contract damages because it was Chandler MFG – not a party to the Agreement with the Super Heaters Parties -- who violated the Agreement by selling the heater units to Bostick, and therefore, the Super Heaters Parties cannot establish causation.[10]

Under Texas law, the essential elements of a breach of contract claim are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App. 2001)).

The Court has already found that the Chandler Parties breached the Agreement when Chandler MFG sold the units to Bostick.[11] Furthermore, the Court has found that the breach by the Chandler Parties gave the Super Heaters Parties the right to terminate the agreement and immediately stop paying royalties.[12] Therefore, the Court finds no merit in the Chandler Parties' causation argument.

---

[7] Super Heaters Parties Brief 2, ECF No. 123.
[8] *Id.*
[9] *Id.* at 3 (citing Summary of Royalty Payments, APP 172–73, ECF No. 104).
[10] Chandler Parties Brief 2–3, ECF No. 124.
[11] Order on Summary Judgment 12, ECF No. 121.
[12] *Id.* at 11–12.

The Court further finds that the Super Heaters Parties are entitled to recover as damages the royalty payments made before discovering the Chandler Parties' breach.

In *Epic Sys. Corp. v. Allcare Health Mgmt. Sys., Inc.*, relied upon by the Super Heaters Parties, the parties entered into a license agreement pursuant to which the plaintiff paid annual royalties and additional royalties to defendant for a nonexclusive, nontransferable, limited license. No. 4:02-CV-161-A, 2002 WL 31051023, at *1 (N.D. Tex. Sep. 11, 2002). The license agreement contained a "most favored nations" provision pursuant to which the plaintiff could substitute the financial terms of any license that defendant granted to any third parties in the same field of use as plaintiff if those terms were more favorable than the financial terms in the license agreement between plaintiff and defendant. *Id.* The defendant refused to provide information to the plaintiff regarding all licenses the defendant entered into with third parties in the same field of use as the plaintiff. *Id.* The defendant eventually provided information to plaintiff that the financial terms in a license granted to a third party were more favorable than those granted to plaintiff. *Id.* The plaintiff then exercised its right to substitute the financial terms in the license agreement with the financial terms provided by defendant to the third party, but the defendant refused to honor the exercise of the plaintiff's rights. *Id.* The plaintiff in *Epic* sought a declaratory judgment that (1) it had the right to substitute more beneficial financial terms in any of the licenses the defendant entered into with third parties in the same field of use, and (2) all amounts it had paid to the defendant under the license agreement to that date be applied against any amounts that would've be due if more favorable financial terms had been substituted. *Id.* Plaintiff also asserted a claim for breach of contract arising out of defendant's failure to comply with the terms of the license agreement. *Id.*

In addressing the plaintiff's breach of contract claim specifically, the court in *Epic* found that the damages should be the license fees paid between the date the defendant refused to provide the plaintiff with the terms of the license agreement made with the third party so that plaintiff could elect to substitute the more favorable financial terms and the date when plaintiff made known its election to substitute terms. *Id.* At *7. The Chandler Parties try to distinguish *Epic*, highlighting that it deals with "most favored nations" provisions and quoting a Fifth Circuit case, *JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 823 F.3d 1006, 1015-16 (5th Cir. 2016), wherein the Fifth Circuit interpreted *Epic*.[13] However, the Fifth Circuit's language in *JP Morgan Chase Bank* that the Chandler Parties quote was seemingly interpreting the *Epic* court's analysis of the plaintiff's declaratory judgment claims, not its breach of contract claim. *See JP Morgan Chase Bank*, 823 F.3d at 1015-16; *see also Epic*, 2002 WL 31051023, at *6-7.

The Court ultimately finds the logic of *Epic* applicable in this case. Therefore, the Court finds that the Super Heaters Parties were damaged by the Chandler Parties' breach of the agreement in the amount of the royalties paid between the date the Chandler Parties breached the Agreement and when the Super Heaters Parties became aware of the breach and terminated the Agreement – a sum of $1,872,066.

### b. Lost Profits

The Super Heaters Parties secondly claim that they were damaged by the Chandler Parties' breach of the Agreement through lost profits.[14] In particular, the Super Heaters Parties contend that when the Chandler Parties sold units to Bostick in breach of the Exclusivity Provision of the parties' Agreement, that meant that Bostick could secure large scale heating-on-the fly jobs by

---

[13] Chandler Parties Sur-Reply 3-4, ECF No. 127.
[14] Super Heaters Parties Brief 3, ECF No. 123.

using the offending units.[15] The Super Heaters Parties aver that had the Chandler Parties not breached the exclusivity provision by selling those offending units to Bostick, the Super Heaters Parties would have captured a percentage of those jobs.[16]

The Chandler Parties counter that these lost profit damages are procedurally improper and barred by the Agreement as a consequential damage.[17] Article 12 of the parties' License Agreement explicitly states that neither party shall be liable to the other for consequential damages.[18] Therefore, to the extent the alleged lost profits are consequential damages, they are not recoverable.

"Consequential damages […] result naturally, but not necessarily, from the defendant's wrongful acts." *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997) (citations omitted). "Under the common law, consequential damages need not be the usual result of the wrong, but must be foreseeable, and must be directly traceable to the wrongful act and result from it." *Id.* (citations omitted). Lost profits may be either "direct" or "consequential" damages, depending on their nature. *DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 181 (Tex. App. 2012) (citation omitted). "[P]rofits lost on other contracts or relationships resulting from the breach (such as resale of property to a third party) are generally classified as indirect or consequential damages." *Id.* "However, lost profits that represent the benefit-of-the-bargain measure of damages required to restore the plaintiff to the economic position he would have enjoyed if the contract had been performed are 'direct' damages when shown to be 'conclusively presumed' to have been foreseen by the parties as a usual and necessary consequence of a breach." *Id.*

---

[15] *Id.*
[16] *Id.*
[17] Chandler Parties Brief 4, ECF No. 124.
[18] *Id.* at 5.

In this case, the Court finds that the lost profits claimed by the Super Heaters Parties are consequential damages, and thereby, they are not recoverable as damages under the Agreement.[19]

### c. Ronald Chandler's Individual Liability

The Super Heaters Parties lastly contend that Ronald Chandler, President of Newco Enterprises, LLC, should be held individually liable for the Chandler Parties' breach and for the Super Heaters Parties' damages.[20] They contend he should be held individually liable because (1) he was a party to the Agreement; and (2) he was granted a five percent ownership interest in SHND, demonstrating that he unquestionably benefitted personally as a result of the Agreement and the Exclusivity Provision, which was a material term of the Agreement.[21] The Super Heaters Parties contend that the Court need not pierce the corporate veil to hold Ronald Chandler individually liable, as he was a party to the Agreement.[22]

The Chandler Parties counter that Ronald Chandler is not individually liable as this issue was never raised in the Super Heaters Parties' Motion for Summary Judgment (ECF No. 102), and the issue of piercing the corporate veil of Newco Enterprises, LLC to reach one of its officers has never been briefed.[23] They aver that the only theory on which to hold Ronald Chandler individually liable is to pierce the corporate veil.[24]

"A corporation is a separate legal entity from its shareholders, officers, and directors." *Walker v. Anderson*, 232 S.W.3d 899, 918 (Tex. App. 2007). "The acts of a corporate agent on behalf of the principal are ordinarily deemed to be the corporation's acts." *Id.* "The individual

---

[19] The Court also finds that these claimed loss profits are too speculative and uncertain to be recovered. *See Arthur Anderson*, 945 S.W.2d at 816.
[20] Super Heaters Parties Brief 7, ECF No. 123.
[21] *Id.*
[22] Super Heaters Parties Reply 5, ECF No. 126.
[23] Chandler Parties Brief 7, ECF No. 124.
[24] *Id.* at 9.

employee or officer who acts for a corporation is that corporation's agent." *Id.* "However, it is the general rule in Texas that a corporation's employee is personally liable for tortious acts which he directs or participates in during his employment." *Id.*; *see also Kelly Coplin Constr. Co., Inc. v. Yates*, No. 4:04-cv-159, 2005 WL 8160963, at *2 (E.D. Tex. Feb. 18, 2005) (finding "the rule in Texas is that a corporate employee is personally liable for his own tortious acts, even if such actions are taken as a representative of the corporation."). "It is not necessary to pierce the corporate veil in order to impose personal liability, as long as it is shown that the corporate officer knowingly participated in the wrongdoing." *Id.*

In this case, the Super Heaters Parties do not allege that Ronald Chandler knowingly directed or participated in any tortious acts. Therefore, to hold Ronald Chandler personally liable, the Court would have to pierce the corporate veil.

There are "three broad categories in which a court may pierce the corporate veil: (1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; and (3) the corporation is used as a sham to perpetrate a fraud." *JNS Aviation, Inc. v. Nick Corp.*, 418 B.R. 898, 907 (N.D. Tex. 2009), aff'd sub nom. *In re JNS Aviation, L.L.C.*, 395 F. App'x 127 (5th Cir. 2010) (quoting *Rimade Ltd. v. Hubbard Enterprises, Inc.*, 388 F.3d 138, 143 (5th Cir. 2004)). "The Texas Business Corporations Act sets additional requirements for piercing the corporate veil in cases based on claims of breach of contract." *Id.* (quoting *Rimade Ltd.*, 388 F.3d at 143). In a breach of contract case, "the veil may be pierced where the defendant shareholder caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder." *Id.* (quoting *Rimade Ltd.*, 388 F.3d at 143) (internal quotation marks omitted). Thus "the various doctrines for disregarding the corporate entity, including alter ego and a sham to perpetrate a fraud, are still very much alive,"

but these doctrines must be supported by facts showing "actual fraud." *Id.* (quoting *Farr v. Sun World Savings Association*, 810 S.W.2d 294, 296 (Tex. App. 1991)).

In this case, the Court finds that the Super Heaters Parties have not provided evidence to support piercing the corporate veil. The Super Heaters Parties have made no allegation of fraud on the part of Ronald Chandler. Therefore, the Court finds that Ronald Chandler cannot be held individually liable for the Chandler Parties' breach of contract and the Super Heaters Parties' accompanying damages.

## IV. Conclusion

The Court thus finds the Super Heaters Parties have proven they are entitled to recover breach of contract damages in the amount of the royalties paid between the date the Chandler Parties breached the Agreement and when the Super Heaters Parties became aware of the breach and terminated the Agreement – a sum of $1,872,066. The Super Heaters Parties' claimed lost profits are not recoverable damages under the Agreement, and Newco Enterprises, LLC's president Ronald Chandler cannot be held individually liable for the breach and for the Super Heaters Parties' damages. Final judgment shall issue separately. Once final judgment has been issued, the parties can file their post-judgment motions for attorneys' fees.

**SO ORDERED** on this **15th day** of **June, 2023**.

*/s/ Reed O'Connor*
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**